179 N.J. Super. 164 (1981)
430 A.2d 975
HOWARD M. LOONAN, PLAINTIFF,
v.
SANDRA MARINO, DEFENDANT.
Superior Court of New Jersey, Chancery Division Somerset County.
Decided February 11, 1981.
*165 Schachter, Wohl, Cohn & Trombadore, for plaintiff (John J. Trombadore, appearing).
Barrett, Jacobowitz and Bass, for defendant (Philip Jacobowitz, appearing).
IMBRIANI, J.S.C.
This case raises the question whether the doctrine of forum non conveniens should be applied in a child custody case and, if so, does it require the transfer of venue in this case?
The parties were divorced in Connecticut in 1976 and the mother was given custody of twin children, now 11 years of age. Shortly thereafter both parties moved to New Jersey  he to Somerset County, she to Monmouth County. The father recently filed a complaint in New Jersey seeking a change of custody, and pursuant to R. 4:76 venue was properly laid in Somerset County. The mother brings this motion to transfer venue to Monmouth County.
It is urged that a change of venue would make court appearances more convenient to the children, as well as for the *166 witnesses who know and understand them best, their friends, teachers, doctors and religious leaders. And since the purpose of the hearing is to determine what is in the best interest of the children, it is said that it is absolutely essential that the court hear as many of these witnesses as possible, which is more likely to occur if the forum is convenient to them.
The mother also claims that one of the reasons this complaint was filed in Somerset County is to harass and vex her. She acknowledges that she is afflicted with multiple sclerosis (MS), but says that while it does not interfere with her ability to properly care for and nurture the children, it would present a substantial problem if she were required to travel to Somerset County for a trial. (At oral argument counsel for the father opined that the trial may be protracted and could last as long as three weeks.)
Two preliminary observations. First, we are not concerned with jurisdiction. This court has state-wide jurisdiction and clearly has authority to render a valid judgment. Second, there is no suggestion that the father improperly or erroneously laid venue in Somerset County. See R. 4:76.
In the past five years the increase in post-judgment of divorce motions has been explosive. And one of the problems receiving increasing attention is, where should venue be laid in a custody case when the parties are both residents of New Jersey, but reside in different counties? Interstate acts govern the interstate cases. But when both parties reside in different counties within New Jersey we must look to our statutes and Rules of Court. R. 4:76 predicates venue on the "domicile" of the plaintiff.
The doctrine of forum non conveniens provides that even though a court has jurisdiction over a case, it is not duty bound to accept it and for sufficient reason may decline jurisdiction and either dismiss the action or transfer it to a more convenient forum. Vargas v. A.H. Ball Steamship Co., 25 N.J. 293 (1957); cert. den. 355 U.S. 958, 78 S.Ct. 545, 2 L.Ed.2d 534 (1958); 20 Am.Jur.2d, Courts, § 172.
*167 In spite of its Latin designation, the use of the phrase is not of ancient English origin. It was first mentioned in Scotland in the middle of the 19th Century and later in that century in England. Baucher, "The Inconvenient Federal Forum," 60 Harv.L.Rev. 908, 909-910 (1947). Courts in America were slow to adopt its use, probably impeded to a great extent by the admonition of Chief Justice Marshall in Cohens v. Virginia, 6 Wheat. 264, 404, 19 U.S. 264, 404, 5 L.Ed. 257, 291 (1821), that "[w]e have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution". However, it is interesting to note that long before the phrase forum non conveniens was coined, its philosophy was expressed and used by two early cases in New Jersey that said a trial court must balance "inconvenience against inconvenience" and ordered that venue be transferred to avoid "great inconvenience and injury to the defendant and those who had dealings with them." Kerr v. State Bank, 4 N.J.L. 415 (Sup.Ct. 1817); Bell v. Morris Canal & C., 15 N.J.L. 63, 66-67 (Sup.Ct. 1835).
In 1947, after applying the doctrine in several admiralty and F.E.L.A. cases, the United States Supreme Court finally (by a 5-4 decision) sanctioned its use in an ordinary case in spite of the fact there there was compliance with the rules of jurisdiction and venue, Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), even though it created some difficulty in its application because the only sanction available in the federal courts was to dismiss the action since there existed no power to transfer cases to other districts. However, Congress quickly remedied the situation in 1948 when it revised 28 U.S.C.A., par. 1404(a), to provide that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."
It was not until Gore v. United States Steel Corp., 15 N.J. 301 (1954), that its use was sanctioned by our Supreme Court:

*168 The federal trend in favor of the use of considerations of forum non conveniens seems to us to be a wholesome one and in furtherance of the sound administration of justice. State courts should not hesitate to follow it in appropriate circumstances. [at 313]
Since Gore our courts have applied the doctrine in many appropriate cases, albeit generally in cases involving one or more foreign parties and not in custody cases involving both litigants who reside in New Jersey.
But why not? If the principle is viable and practical in cases involving nonresident litigants, why should we hesitate to extend its benefits to our own citizens, especially in custody cases?
To say that once a New Jersey court has jurisdiction and venue it may not apply the doctrine of forum non conveniens and divest itself of jurisdiction is patently false. Amercoat Corp. v. Reagent Chem. & Research, Inc., 108 N.J. Super. 331 (App.Div. 1970); Cabibo v. Cabibo, 13 N.J. Super. 373 (Ch.Div. 1951). Indeed, the doctrine "can never apply if there is [an] absence of jurisdiction or mistake of venue." Gulf Oil Corp. v. Gilbert, supra, 67 S.Ct. at 841.
We obviously have reached that stage in the development of our law where the viability of the doctrine is no longer questioned and the only issue to decide is whether the facts and circumstances in a particular case justify its use. This being so, how should a court decide whether to apply the doctrine? That determination has wisely been left to the discretion of the trial judge, who has been given many guidelines to follow. Gulf Oil Corp. said:
Important considerations are the relative ease of access to sources of proof; ... the cost of obtaining attendance of willing witnesses; ... and all other practical problems that make trial of a case easy, expeditious and inexpensive ... The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not by choice of an inconvenient forum, "vex", "harass" or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. [at 843]
Gore repeated this language (15 N.J. at 306) and added that whether to apply the doctrine turns "on considerations of convenience and justice." (At 311).
*169 Moreover, our Legislature has also expressly provided trial courts with guidelines to follow in custody cases, albeit admittedly in custody disputes involving foreign jurisdictions or parties. In 1979 New Jersey adopted the Uniform Child Custody Jurisdiction Act, N.J.S.A. 2A:34-29, et seq., which provides that in determining whether a custody case has been brought in a "convenient forum" the court may take into account the following factors:
1. If another state is or recently was the child's home state;
2. If another state has a closer connection with the child and his family or with the child and one or more of the contestants;
3. If substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available in another state. [N.J.S.A. 2A:34-35c]
If we were to simply substitute the word "county" for "state," we have standards to apply in intrastate disputes which are rational, can be applied with relative ease and uniformly throughout the State, and embody the substance of what our Legislature and both the federal and our state Supreme Courts believe are practical and rational guidelines to follow in determining what is a convenient forum in a custody case.
While other states have reached varying decisions of what is the proper venue in a custody case, the trend appears to favor the forum that is most convenient to the children and not the parents. For instance, Clark v. Superior Ct. of Mendocino Cty., 73 Cal. App.3d 298, 140 Cal. Rptr. 709 (D.Ct.App. 1977), said the forum which has "the best opportunity to investigate the facts is most qualified to take Jurisdiction" because the "interest of the child is [best] served when the forum [is the one which] has optimum access to relevant evidence about the child and family". 140 Cal. Rptr. at 713-715. In 1975 Texas adopted a Family Code Act which emphasizes the residence of the child and practically ignores the residence of the parents. See Koons, "Parent-Child Relationship," 9 Tex.Tech.L.Rev. 243, 258 (1977). Indeed, Texas has gone so far as to say that where a child's residence has been in another county for six or more months, *170 venue of a custody hearing must be transferred to that county. Tex.Family Code Ann., § 11.06(b).
There are no rigid formulas to apply and we must "weigh sundry factors, private and public, which bear upon the justice of a plaintiff's choice." Starr v. Berry, 25 N.J. 573, 584 (1958). And as one writer said a long time ago:
The question of the proper place of trial is essentially demonstrative in character, like the question of time which arises upon a motion for continuance. It should be dealt with in the same way. The court should be free to decide according to the circumstances of the case with a view to giving each party a reasonably fair opportunity to present his proof. Indirect metaphysical reasoning as to the nature of actions and dogma as to jurisdiction should not be allowed to obscure this simple practical issue. The natural place to raise this issue is in the court where the plaintiff has begun his action. [Foster, "Place of Trial," 44 Harv.L.Rev. 41, 41 (1931)].
What we ultimately seek to accomplish is to have "localized controversies decided at home." Gulf Oil Corp., supra, 67 S.Ct. at 843. And the "home" in this case is where these children, their friends, teachers, doctors and advisors reside, not in some distant county where their father (the noncustodial parent) resides by pure happenstance.
The father says that R. 4:76 requires that an action for custody "shall" be filed in the county which is the domicile of the plaintiff. Thus, he argues, the rule is mandatory and a court is without authority to transfer venue. Not so.
First, R. 4:76 relating to venue in matrimonial cases is not so constrictive and provides that:
... unless the court otherwise orders, the venue shall be laid in the county in which plaintiff was domiciled when the cause of action arose. [Emphasis supplied]
Patently the purpose of the underlined phrase is to vest the court with authority to transfer venue in appropriate cases. Second, if we accepted his argument, the doctrine of forum non conveniens would be applicable in every court throughout this State except the matrimonial court. To state such a result is to demonstrate its absurdity. Indeed, since we are dealing with children and the parens patriae obligation of a court to do what *171 is in their best interest, it is even more important in a case such as this that venue be laid in a county which is convenient to the children and the witnesses who are in the best position to know them. The father emphasizes the great cost and inconvenience to him and his witnesses if they are compelled to try this case in Monmouth County. While these are certainly factors to be considered, they are not controlling. "The test is not ... the achievement of minimum expense and inconvenience ... in the presentation of witnesses." Radigan v. Innisbrook Resort and Golf Club, 150 N.J. Super. 427, 431 (App.Div. 1977). The court has been supplied with a list of 29 potential witnesses for the father, some of whom are medical experts. The court surmises from the affidavits and oral argument that their medical opinions do not pertain to treatment which they rendered to the children or defendant, but rather relate to the alleged inability and incompetency of a person afflicted with MS to care for minor children.
There are two reasons why these arguments must be rejected. First, this is not a case where the father would be required to try this case in a distant forum that would take him and his witnesses many hours or days to reach. The Monmouth courts are only 25 or 30 miles away and accessible from several major highways. A trip by car from Somerset County would take only about 45 minutes.
Second, as indicated above, the major concern of the court is not what is convenient to the father and his witnesses, but rather what is convenient to the children and the potential witnesses who are familiar with them so that the court can be assured of receiving all of the relevant and necessary information about the children.
Ordinarily, neither would the court be unduly concerned with the convenience of the mother, except that this is an unusual case because it involves a woman afflicted with a serious physical illness. Common decency and fairness dictate that this factor be given more than the customary consideration in determining *172 what is a convenient forum. Indeed, while it is asserted that the mother is seeking the benefits of both worlds by saying on the one hand that she is competent to care for the children, but on the other hand would find it difficult to come to Somerset County for a trial, so, too, does the father make a similar argument. On the one hand, he asserts that the mother is not physically capable of properly caring for the children, but on the other hand, he says she is capable of traveling to Somerset County to try this case.
The court can visualize circumstances whereby a mother, although unable to physically travel, would be capable of properly and competently rearing her minor children. And where the children have been in her sole custody for the past five years, she should be given full opportunity to demonstrate what is the main issue in this case  whether she has the ability to care for her children  not whether she is physically capable of traveling to Somerset County to attend what may be a protracted trial of up to three weeks.
A balancing of the conveniences is essential to a proper determination of whether the doctrine should be applied. And while this necessarily will be implemented on an ad hoc basis, for guidance to the trial bar there will evolve in due time a pattern of case law which will clearly demonstrate what is the proper forum in a child custody case. Many litigants undoubtedly have legitimate differences as to what constitutes the appropriate forum to try a case which cannot always be satisfactorily resolved by statutes or rules of court. In those cases it is better to resolve the dispute by the exercise of discretion by an impartial judge, rather than by the unfettered option of the plaintiff.
The court concludes that the doctrine of forum non conveniens should be applied in a child custody case and that in this case venue shall be transferred to Monmouth County because the two children live closer to the Monmouth County courts (and this is especially important here because they must be interviewed by *173 the judge, see N.J.S.A. 9:2-4; Callen v. Gill, 7 N.J. 312, 319 (1951); the friends, teachers, doctors and religious leaders of the children who will probably be called as witnesses also live closer to the Monmouth County courts; and since the mother is afflicted with MS it will be difficult for her to travel to Somerset County for an extended trial.