86 A.3d 760

MARGO PATRICE JOHNSON, PLAINTIFF, v. AHMAD
RASHAD BRADSHAW, DEFENDANT.

Superior Court of New Jersey
Chancery Division Passaic County

Decided February 25, 2014.

102 

*Laurence J. Cutler* for plaintiff (*Laufer, Dalena, Cadicina, Jensen & Boyd LLC,* attorneys).

*Robert T. Corcoran* for defendant (*RT Corcoran, PC,* attorneys).

MOHAMMED, J.S.C.

I

PROCEDURAL HISTORY & FACTUAL FINDINGS

This matter is before the court on the plaintiff's motion seeking a modification of a December 13, 2011, order. Defendant opposes the motion, asserting that the court lacks jurisdiction to modify the order. Plaintiff filed a complaint on June 9, 2011, through

which she sought to establish a child support order from defendant. The issue before this court is whether New Jersey has continuing, exclusive jurisdiction over a Uniform Interstate Family Support Act (hereinafter "UIFSA") application to enter a new order, when there is a temporary child support order, but no party presently lives in New Jersey.

The central facts of this case are not in dispute. Plaintiff and defendant were never married. A child was born from their relationship in the state of Virginia on October 16, 2010. At the time, defendant was employed as a running back by the New York Giants, a professional football team in the National Football League. While employed by the New York Giants, defendant lived in Clifton, New Jersey. Plaintiff and the child have never lived in New Jersey. Plaintiff is an hourly wage-earner.[1]

On June 9, 2011, plaintiff initiated an incoming UIFSA application for child support. On December 13, 2011, a hearing was held (hereinafter "2011 hearing") on the issue of child support. On that date, defendant, who did not appear, was represented by counsel. Although plaintiff appeared without private counsel at the 2011 hearing, an attorney from Passaic County Board of Social Services (hereinafter "Board") appeared on her behalf.

During the 2011 hearing, the court entered a child support order in the amount of $1200 per month (hereinafter "2011 order.") The transcript of the 2011 hearing shows that the court intended to enter a temporary, pendente lite child support order pending further litigation. First, counsel from the Board, stated "we have one case, will be looking for a temporary order." The court immediately acknowledged counsel's statement. Moreover, the court stated it was entering a temporary order: "I am only

---

[1] Plaintiff's counsel notified the court by supplemental certification on October 25, 2013, that the applicant and the child no longer reside in Virginia, but have moved to another jurisdiction. This supplemental certification, however, was submitted out of time and the court does not consider it in its opinion. Even if it did, the information contained therein would have no bearing on the legal analysis or resulted in a different outcome.

going to enter a temporary amount right now to cover your expenses." The court also stated that the $1200 amount would have no effect on the final order:

This is just temporary. It will have nothing to do with the final amount ... Because I do not have enough to do this from you or from [defendant] to do that [a final order] at this time.... So you have your own income, so I'm going to say $1200 a month, all right? Temporarily. Only temporarily to help you with the bills.

Although termed a temporary order, it appears that neither party requested a court date or a discovery schedule. Further, the court explicitly stated it was not giving a return date at the 2011 hearing.

Following the 2011 hearing, plaintiff retained private counsel, who attempted through informal discovery to obtain the defendant's financial information. It appears both parties agreed to this arrangement and did not contact the court about discovery until the present application.

On February 6, 2013, defendant was released from the New York Giants and became an unrestricted free agent. On June 11, 2013, defendant entered into a contract with the Indianapolis Colts, also of the National Football League, to work as a running back. On or about August 2013, defendant purchased a home in Virginia where he is now domiciled. After defendant's release from the New York Giants and his entering into a contract with the Indianapolis Colts, his new attorney moved to dismiss the New Jersey action. Defendant argues that New Jersey lost continuing, exclusive jurisdiction to modify the 2011 order because no party presently lives in New Jersey.

II

JURISDICTION

Central to this action is the issue of whether this court maintains continuing, exclusive jurisdiction under UIFSA to enter another order when no party lives in New Jersey. According to the court's research, the issue of whether under UIFSA a court

loses continuing, exclusive jurisdiction when a temporary order has been entered, but the parties have left the state before a final order or discovery schedule has been issued, is a matter of first impression in New Jersey.

Defendant concedes that jurisdiction was proper when the 2011 order was entered. Defendant argues that New Jersey no longer has jurisdiction to enter a new order as no party presently lives in New Jersey. Plaintiff argues that New Jersey has continuing, exclusive jurisdiction because the 2011 order was temporary and the court anticipated making a final order. Plaintiff further argues that a final order now would not be a modification of the temporary order but rather a continuation of the 2011 hearing. Finally, plaintiff argues that because of the alleged dilatory actions of defendant after the 2011 hearing, equity warrants a finding of jurisdiction.

### A. Jurisdiction to Enforce the 2011 Order.

While there are no New Jersey cases that directly address the entering of a final child support order after all parties have left the jurisdiction, certain guiding principles surrounding UIFSA are illuminative. UIFSA, as adopted by the fifty states and the District of Columbia, provides a "comprehensive framework for dealing with the jurisdictional problems" of child support enforcement. *Peace v. Peace,* 325 *N.J.Super.* 122, 127, 737 *A.*2d 1164 (Ch.Div.1999). "Under UIFSA, jurisdictional disputes are resolved by reference to the concept of 'continuing, exclusive jurisdiction.'" *Id.* at 128, 737 *A.*2d 1164 (quoting *N.J.S.A.* 2A:4–30.72). When there is only one child support order, as in this case, a court retains jurisdiction to *enforce* a child support order when all the parties resided elsewhere, where the state order was the only order setting defendant's child support obligation. *Youssefi v. Youssefi,* 328 *N.J.Super.* 12, 21, 744 *A.*2d 662 (App.Div. 2000).

In *Youssefi, supra,* 328 *N.J.Super.* at 21, 744 *A.*2d 662, the court opined New Jersey did not have exclusive continuing jurisdiction to modify a final child support order when no party lived in the

jurisdiction. There, years after the parties' divorce was finalized, the plaintiff sought enforcement of a child support order originally entered in New Jersey. *Id.* at 13–15, 744 *A.*2d 662. At the time of enforcement, however, the defendant lived in France and the plaintiff lived in Utah. The defendant argued that New Jersey did not have jurisdiction to hear the post-judgment claim. The court opined that while New Jersey "lost continuing, exclusive jurisdiction to modify its child support order," it maintained jurisdiction to enforce its existing order when no other state had modified it. *Id.* at 21, 744 *A.*2d 662. The court affirmed enforcement of the child support order.

This court finds that it has jurisdiction to enforce the 2011 order. There is no application that either party has filed in another jurisdiction. The *Youssefi* court clearly opined that even when the parties have been domiciled outside the jurisdiction for years, New Jersey retains power to enforce its child support orders. Thus, this court continues to have jurisdiction to enforce its 2011 order.

### B. Jurisdiction to Modify the 2011 Order.

To resolve the central issue of jurisdiction to modify in this case, the court first looks to the statute at issue and to the statutory definitions. UIFSA, codified in New Jersey as *N.J.S.A.* 2A:4–30.65 to –30.123, and the earlier-enacted Federal Full Faith and Credit for Child Support Orders Act (28 *U.S.C.A.* § 1738B), obligates states to enforce child support orders issued by another state, but also imposes limitations on the authority to modify child support orders. Under the Act "child support" is defined as:

> the amount required to be paid under a judgment, decree, or order, *whether temporary, final or subject to modification,* issued by the Superior Court, Chancery Division, Family Part or a court or administrative agency of competent jurisdiction of another state, for the support and maintenance of a child, or the support and maintenance of a child and the parent with whom the child is living, which provides monetary support, health care coverage, any arrearage or reimbursement, and which may include other related costs and fees, interest and penalties, income withholding, attorney's fees and other relief.
>
> [*N.J.S.A.* 2A:17–56.52 (emphasis added).]

■ Thus, under the Act, "child support" is broadly defined. The statutory definition does not distinguish between temporary orders, final orders, or orders subject to modification as both parties ask this court to do. In other words, under the New Jersey statute child support is child support. Moreover in New Jersey, all child support orders, regardless of how they are termed, are subject to modification if circumstances warrant. *N.J.S.A.* 2A:34–2; *Isaacson v. Isaacson,* 348 *N.J.Super.* 560, 792 *A.2d* 525 (App.Div.2002).

■ Consequently, the remaining issue is whether a new child support order issued after defendant's departure from New Jersey would be a modification of the 2011 order as defendant argues, or whether a new order would be a continuation of the 2011 hearing. Again, the court first looks to the UIFSA statute as codified by New Jersey. The Act provides, in relevant part, that:

a. A tribunal of this State issuing a support order consistent with the law of this State has continuing, exclusive jurisdiction over a child support order:

(1) as long as this State remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or

(2) until all of the parties who are individuals have filed written consents with the tribunal of this State for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.

b. A tribunal of this State issuing a child support order consistent with the law of this State may not exercise its continuing jurisdiction to modify the order if the order has been modified by a tribunal of another state pursuant to this act or a law substantially similar to this act.

c. If a child support order of this State is modified by a tribunal of another state pursuant to this act or a law substantially similar to this act, a tribunal of this State loses its continuing, exclusive jurisdiction with regard to prospective enforcement of the order issued in this State and may only:

(1) enforce the order that was modified as to amounts accruing before the modification;

(2) enforce nonmodifiable aspects of that order; and

(3) provide other appropriate relief for violations of that order which occurred before the effective date of the modification.

[*N.J.S.A.* 2A:4–30.72.]

The court finds that when the 2011 order was entered, New Jersey had exclusive and continuing jurisdiction. At that time, defendant, the biological father of the child, lived in Clifton, New

Jersey. The court finds that the record is clear that the 2011 order was termed as a temporary order, and critically no return date or timeline for discovery schedule was entered or discussed by the court. In the 2011 hearing, the issue presented before the court by counsel, on behalf of plaintiff, was a temporary court order for child support. The totality of the record shows by clear and convincing evidence that the $1200 per month order was a temporary order pending the entering of a final order.

According to UIFSA, the temporary order itself, however, squarely fits into the definition of a "child support order" under the statutory definition in *N.J.S.A.* 2A:17–56.52. The plain language of the statutory definition of "child support" makes no distinction between a temporary order and final order. As such, the fact that the 2011 order was termed temporary does not bear on the issue of continuing, exclusive jurisdiction to modify the 2011 order.

Looking to New Jersey's sister jurisdictions, in a similar case to the one before this court, the Louisiana Supreme Court reversed a lower court's decision to modify a child support order where the parties had left Louisiana after the entering of the original order. *Jurado v. Brashear,* 782 *So.*2d 575, 580 (La.2001). There, after both parties had left the jurisdiction, the plaintiff filed a motion to enforce and increase child support. The Louisiana trial court entered a judgment of enforcement and an order to modify child support. *Id.* at 576. The appellate court affirmed the enforcement and modification, holding that Louisiana maintained continuing, exclusive jurisdiction until the order was registered in another state for the purpose of obtaining a modification. On certiorari, the Louisiana Supreme Court reversed the appellate court and vacated the trial court's modification of child support after the parties had left the jurisdiction. The court agreed that the trial court had jurisdiction to enforce the previous Louisiana orders, but opined that a modification was improper because personal jurisdiction over the issue had vested in another jurisdiction. *Id.* at 580.

The Kansas appellate court reached a similar result in *In re Marriage of Myers*, 30 *Kan.* 56, *P.*3d 1286, 1291 (2002). In *Myers*, the parties were divorced in Kansas. The mother and child moved to Arkansas and the father moved to Texas. *Id.* at 1287. The mother moved to modify child support in the issuing state, Kansas. *Ibid.* The trial court held that "since it appears that neither party has filed any motions requesting that jurisdiction over the issues of child support be moved or transferred to another state pursuant to [Kansas' equivalent of UIFSA Section 205(a)(1) and (2) and *N.J.S.A.* 2A:4–30.72–30.73], this court continues to have jurisdiction over the issue of child support obligations." *Ibid.* In reviewing both its own case law and case law of other jurisdictions, the Kansas appellate court determined that as all the parties resided outside of Kansas, under UIFSA the Kansas trial court did not have continuing exclusive jurisdiction to modify the child support order. The *Myers* court informed the applicant she had "the option of asking the originating Kansas tribunal to forward her motion to modify to Texas, or she [could] file the motion to modify in Texas herself." *Id.* at 1291.

Finally, the court's research as to the drafters of UIFSA comments unmistakably shows their intent that an issuing state cannot modify a child support order after all parties have left the issuing state's jurisdiction. In comment to Section 205, continuing exclusive jurisdiction, the drafters stated that a jurisdiction where the parties no longer live should not modify the order if:

all the relevant persons the obligor, the individual obligee, and the child have permanently left the issuing state, *the issuing state no longer has an appropriate nexus with the parties or child to justify exercise of jurisdiction to modify.* Further, the issuing tribunal has no current information about the factual circumstances of anyone involved, and the taxpayers of that state have no reason to expend public funds on the process.

[*UIFSA* § 205 cmt., 9 *U.L.A.* 284 (2001).]

The plain meaning of the comment makes it clear that when the parties no longer live in the jurisdiction, that jurisdiction is no longer the proper jurisdiction for a modification of a previous order. *See also UIFSA* § 610 cmt., 9 *U.L.A.* 284 (2001) ("once every individual party and the child leave the issuing state, the

continuing, exclusive jurisdiction of the issuing tribunal to modify its order terminates.") Furthermore, the drafters' comments to section 610 state that in the overwhelming majority of cases which have dealt with this issue, *"the party seeking modification must seek that relief in a new forum,* almost invariably the state of residence of the other party." *UIFSA* § 610 cmt., 9 *U.L.A.* 284 (2001).[2]

■ In the instant case, a child support order that was termed temporary was entered in 2011. The 2011 order had no return date or discovery schedule. Presently both parties and the child are domiciled in other jurisdictions. Critically, the New Jersey definition of child support does not distinguish between temporary and final orders. Therefore, the court finds it appropriate not to create a distinction where there is none under the statute. The statute's language plainly states that temporary orders and final orders have the same definition under the statute. Moreover, the court finds that the design of UIFSA is for a court with personal jurisdiction over the obligor to establish a support order and to retain jurisdiction to enforce or modify the order until the occurrence of a condition which terminates continuing exclusive jurisdiction in that state. Therefore, the court follows the appellate court's decision in *Youssefi* and the persuasive authority expressed in *Jurado,* and finds that the entering of an order by this court at this time would be a modification of the 2011 order and not a continuation of the 2011 hearing. Because neither defendant, plaintiff, nor the child lives in New Jersey, the court no longer has

---

[2] Counsel for plaintiff sent a letter to the court concerning an unpublished New Jersey Appellate decision. Pursuant to *Rule* 1:36–3 "[n]o unpublished opinion shall be cited to any court by counsel unless the court and all other parties are served with a copy of the opinion and of all contrary unpublished opinions known to counsel." While opposing counsel was notified of the opinion, plaintiff did not inform the court of any contrary unpublished opinions. Accordingly, the court does not consider the unpublished case, which in any event, dealt with a completely different statute where both parties agreed to be subject to New Jersey's jurisdiction.

continuing, exclusive jurisdiction to modify the child support order.

For the court to enter a new child support order it would almost certainly have to rely on additional evidence and schedule further hearings. To find that the admission of new evidence and entering of a new order based on that information would not be a modification of the 2011 order, or a new order altogether, would either circumvent the plain meaning of *N.J.S.A.* 2A:4–30.72 (a) or swallow the continuing, *exclusive* jurisdictional requirement altogether. Such a holding would run afoul of the clear intent of the drafters of the UIFSA. Furthermore, if this court were to enter a new or modified order, another jurisdiction would not have to recognize it and would likely enter its own order. Congress and the States adopted UIFSA precisely to eliminate conflicting child support obligation issues.

## III

## EQUITABLE ESTOPPEL AND FORUM NON CONVENIENS

■ Finally, the court addresses plaintiff's argument that due to defendant's delay in delivering financial documents to plaintiff's counsel equity warrants a finding of continuing, exclusive jurisdiction over defendant.

■ It is within the discretion of the court whether to employ equitable estoppel in any given case. *Faustin v. Lewis,* 85 *N.J.* 507, 511, 427 *A.*2d 1105 (1981); *Patel v. Navitlal,* 265 *N.J.Super.* 402, 411, 627 *A.*2d 683 (Ch.Div.1992). The doctrine is applied only in very compelling circumstances. *Davin, L.L.C. v. Daham,* 329 *N.J.Super.* 54, 67, 746 *A.*2d 1034 (App.Div.2000). The doctrine is "designed to prevent a party's disavowal of previous conduct if such repudiation 'would not be responsive to the demands of justice and good conscience.'" *Carlsen v. Masters, Mates & Pilots Pension Plan Trust,* 80 *N.J.* 334, 339, 403 *A.*2d 880 (1979)

(quoting *W. Jersey Title, Co. v. Indust. Trust Co.*, 27 *N.J.* 144, 153, 141 *A.*2d 782 (1958)).

Equitable estoppel does not require reliance on a promise, but a reliance on conduct, inactions, misrepresentation, or concealment of material facts. *Eileen T. Quigley, Inc. v. Miller Family Farms, Inc.*, 266 *N.J.Super.* 283, 297, 629 *A.*2d 110 (App.Div.1993). Equitable estoppel has been defined as:

> "the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed ... as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse ..."
>
> [*Heuer v. Heuer*, 152 *N.J.* 226, 237, 704 *A.*2d 913 (1998) (internal citations omitted).]

This court, indeed any court, cannot use its equitable powers to form its jurisdiction over any case. Jurisdiction, both personal and subject matter, is the foundation of every case a court may hear. The jurisdictional foundations must stand alone and cannot be propped up by the equitable and legal powers that a court may use once jurisdiction is established. Put another way, the power of the court to use equity can only be exercised when the court has proper jurisdiction. Without jurisdiction the equitable and legal decisions of the court are moot and unenforceable. *See generally Louisville & Nashville R. Co. v. Mottley*, 211 *U.S.* 149, 154, 29 *S.Ct.* 42, 53 *L.Ed.* 126 (1908). (dismissed on appeal for lack of subject matter jurisdiction when neither party had raised the issue); *Country of Luxembourg ex rel. Ribeiro v. Canderas*, 338 *N.J.Super.* 192, 202, 768 *A.*2d 283 (Ch.Div.2000) (judgment vacated due to lack of personal jurisdiction over the defendant). To use equitable powers to bolster or create jurisdiction in any case would circumvent long standing precedent and require judicial fact finding on the behavior of parties before jurisdiction is established. Therefore, the court will not consider the alleged dilatory behavior of defendant and any issues flowing from same to invoke equitable estoppel since the court no longer has continuing, exclusive jurisdiction.

116

Even if the present action were considered a continuation of the 2011 order and jurisdiction were appropriate, which it is not, the case still should not be heard in New Jersey under the doctrine of forum non conveniens. The doctrine of forum non conveniens " 'is firmly embedded in the common law of this State.' " *Kurzke v. Nissan Motor Corp.*, 164 *N.J.* 159, 164, 752 *A.*2d 708 (2000) (quoting *Civic S. Factors Corp. v. Bonat*, 65 *N.J.* 329, 332, 322 *A.*2d 436 (1974)). " '[T]he essence of the doctrine is that a court may decline jurisdiction whenever the ends of justice indicate a trial in the forum selected by the plaintiff would be inappropriate.' " *Ibid.* (quoting *D'Agostino v. Plaintiff & Plaintiff, Inc.*, 225 *N.J.Super.* 250, 259, 542 *A.*2d 44 (App.Div.1988), *aff'd*, 115 *N.J.* 491, 559 *A.*2d 420 (1989)). New Jersey courts have emphasized that "[t]he doctrine is equitable in nature and, therefore, decisions concerning its application ordinarily are left to the sound discretion of the trial court." *Id.* at 165, 559 *A.*2d 420 (*citing Civic S. Factors Corp., supra*, 65 *N.J.* at 333, 322 *A.*2d 436). The doctrine of forum non conveniens provides that even when "a court has jurisdiction over a case, it is not duty bound to accept it and for sufficient reason may decline jurisdiction and either dismiss the action or transfer it to a more convenient forum." *Loonan v. Marino*, 179 *N.J.Super.* 164, 166, 430 *A.*2d 975 (Ch.Div. 1981) (citing *Vargas v. A.H. Bull Steamship Co.*, 25 *N.J.* 293, 135 *A.*2d 857 (1957), *cert. denied*, 355 *U.S.* 958, 78 *S.Ct.* 545, 2 *L.Ed.*2d 534 (1958)).

In the instant case, all the parties and the child at issue are presently domiciled elsewhere. To hear the child support issue in New Jersey would require continuing litigation in a state where no parties live. Moreover, any scheduled hearing concerning the child support order would require the parties to travel again to New Jersey and have the State of New Jersey expend additional resources on the issue. The court finds that even if it had continuing, exclusive jurisdiction to enter a modification, the doctrine of forum non conveniens would apply to this application. Accordingly, the court would have declined jurisdiction.

Since the court lacks jurisdiction to enter a new order i.e. modify its prior order, the court declines to entertain all other issues raised by counsel, including attorney fees.

## IV

## CONCLUSION

The court finds that when defendant left New Jersey and domiciled in another state, this court lost continuing, exclusive jurisdiction under UIFSA. The court further finds that while the 2011 order was termed temporary, the New Jersey statutory definition of child support contained in *N.J.S.A.* 2A:17–56.52 is inclusive of temporary and final child support orders making no distinction between the terms. The court therefore finds that any subsequent order entered would be a modification of the 2011 order. As the court no longer has continuing, exclusive jurisdiction over the matter, the court cannot enter a modification of the 2011 order. Furthermore, since the court lacks jurisdiction to modify an order, the court will not use its equitable powers to establish continuing, exclusive jurisdiction over defendant. Jurisdiction must be established first before such powers can be used. Finally, this court continues to retain its jurisdiction to enforce the 2011 order.